Hazel Burnham et al. *v.* Herbert W. Hayford, Executor (Estate of Christina E. Merrill)

Inglis, C. J., Baldwin, O'Sullivan, Wynne and Bordon, Js.

Argued February 2—decided March 16, 1954

*T. Holmes Bracken,* with whom was *John Krick,* for the appellant (defendant).

*John J. Mezzanotte,* with whom, on the brief, were *William L. Hadden* and *Clarence A. Hadden,* for the appellees (plaintiffs).

O'SULLIVAN, J. This matter came to the Superior Court as an appeal from a decree of the Probate Court for the district of Clinton accepting and allowing the administration account of the defendant, executor of the will of Christina E. Merrill. The two plaintiffs are named as legatees in a codicil to the will. The Superior Court sustained the appeal, and from its judgment the defendant has appealed to this court.

The finding, which is not subject to correction, recites the following facts: Christina E. Merrill died on December 31, 1949, a resident of Clinton. She left a will and a codicil, executed July 19, 1945, and September 8, 1947, respectively. Under articles first and second of the will the testatrix made specific bequests of silver and china to two friends. Under article third she gave $500 to the Masonic Lodge in Niantic. She provided in article fourth that, "[i]f there shall remain, after the expenses of administration have been paid and after the payment of Article III hereof, a sum not less than Two Thousand ... Dollars from the proceeds of the cash, mortgages and securities that are owned by me at the time of my death," an additional legacy of $1000 should go to the aforementioned lodge and a legacy of $1000 should go to the Baptist Church in Niantic; if the available proceeds were less than $2000, the lodge and the church were to share equally in them. Under article fifth she gave the residue of her property, both real and personal, to Herbert W. Hayford, whom she appointed executor of her will.

Article first of the codicil reads: "I make the following gifts only on condition that there remain proceeds from cash, mortgages and securities that are owned by me at the time of my death after payment of Article III and Article IV of my said Will and in which case I give and bequeath Three Thousand ... Dollars to Shepard Hall of Miami, Florida, Two Thousand . . . Dollars to Eleanor Burnham (Mrs. Ernest) of Clinton, Connecticut, Two Thousand ... Dollars to Miss Hazel Burnham of Clinton, Connecticut, Two Thousand . . . Dollars to Mrs. Edith Haskell of New London, Connecticut, Two Thousand . . . Dollars to the Clinton Baptist Church and One . . . Dollar to my brother,

Charles H. Williams; provided that should any one or more of those named herein predecease me, such gift or gifts shall lapse. Should there be insufficient funds from such proceeds as hereinbefore described, to make payment of the foregoing gifts in full, said proceeds shall be divided among those beneficiaries entitled to take in the ratio that the amounts of the gifts bear to each other. Should there be funds from such proceeds left over after payment as provided, said balance shall be added to the rest, residue and remainder provided for under Article V of my said Will and distributed in accordance with the terms thereof."

Neither the will nor the codicil contains any express provision for the payment of the testatrix' debts. The inventory filed by the executor lists real estate valued at $13,000 and personal property at $31,232.40, of which all but $1000 represents cash and securities. The defendant's administration account was accepted and allowed by the Probate Court. The account showed that the cash and securities, rather than the real estate, had been used to pay the ante-mortem claims, and that nothing was left for satisfaction of the legacies under article fourth and the codicil.

On the basis of the foregoing facts the Superior Court sustained the appeal of the plaintiff legatees. The conclusions which the court reached and upon which its decision was predicated were several in number, but they can be summarized as follows: The Probate Court should not have accepted and allowed the administration account because in doing so it approved not only the executor's failure to charge the realty with the payment of ante-mortem claims but also his use of the testatrix' cash and securities to pay them.

In challenging the court's conclusions, the defendant maintains that the Superior Court went beyond its jurisdiction by engaging in a construction of the will and the codicil. This, he insists, was exercising a power which the court did not possess. He contends that if a construction of those testamentary instruments was necessary it should have been sought from the Superior Court in an action specially adapted to that end.

On an appeal from probate, the Superior Court sits as, and has no greater power than, a Court of Probate. *Palmer* v. *Reeves,* 120 Conn. 405, 409, 182 A. 138; 1 Locke & Kohn, Conn. Probate Practice, § 215. Courts of Probate possess only such powers as are expressly or by necessary implication conferred on them by statute. *Potter* v. *Alcorn,* 140 Conn. 96, 100, 99 A.2d 97; *Delehanty* v. *Pitkin,* 76 Conn. 412, 416, 56 A. 881. The General Assembly has not empowered them to determine directly and conclusively the construction to be given to wills and codicils. *Chamberlin's Appeal,* 70 Conn. 363, 377, 39 A. 734. It follows that the Superior Court, when sitting as a Probate Court, is similarly lacking in that power. A Probate Court, however, is not impotent under all circumstances to consider and pass upon the meaning of a will. "[W]henever in [the] settlement [of estates] a judgment becomes necessary upon a controversy which is plainly within the jurisdiction conferred by statute, involving the consideration of title or other matter which *per se* is without that jurisdiction, it is clear that the court has power to consider such question, so far as may be necessary to render its judgment." *Mack's Appeal,* 71 Conn. 122, 130, 41 A. 242. The Probate Court, and the Superior Court on appeal, may always construe a will when to do so is merely in-

cidental to the determination of a matter within the court's express statutory jurisdiction. 1 Locke & Kohn, op. cit., p. 174. This has always been our law. *Culver* v. *Union & New Haven Trust Co.,* 120 Conn. 97, 102, 179 A. 487; *Chase National Bank* v. *Schleussner,* 117 Conn. 370, 376, 167 A. 808; *Pigott* v. *Donovan,* 91 Conn. 444, 446, 99 A. 1047; *Eccles* v. *Rhode Island Hospital Trust Co.,* 90 Conn. 592, 600, 98 A. 129; *Gray* v. *Goddard,* 90 Conn. 561, 567, 98 A. 126; *Slattery* v. *Woodin,* 90 Conn. 48, 50, 96 A. 178; *Ward* v. *Ives,* 75 Conn. 598, 602, 54 A. 730; *State* v. *Blake,* 69 Conn. 64, 78, 36 A. 1019. In the case at bar, the account indicates that nothing is available for distribution to various legatees, including the plaintiffs. It was the duty of the Probate Court to determine whether the account was correct in that regard. *Mathews' Appeal,* 72 Conn. 555, 559, 45 A. 170; 2 Locke & Kohn, op. cit., § 558. In deciding that question, the court was required to construe the will and the codicil to determine whether the testatrix' debts were chargeable against her "cash, mortgages and securities" prior to her realty. Since such a construction was merely incidental to the duty of the Probate Court to pass upon the allowance of the administration account, that court, as well as the Superior Court on appeal, did not exceed its jurisdiction in ascertaining the meaning of the testamentary instruments.

The main claim of the defendant calls upon us to determine whether the Superior Court was correct in ruling that the residuary estate should have been charged with the payment of the ante-mortem claims.

In article first of the codicil the testatrix provided that the gifts to the plaintiffs should be made only if proceeds remained from cash, mortgages and

securities, owned by her when she died, after the expenses of administration and the legacies, totaling $2500, to the Masonic Lodge and the Baptist Church had been paid. Clearly, the plaintiffs' gifts are not general legacies, since they are payable only from specified personalty. "The fundamental distinction between general and specific legacies is that the former may be satisfied out of the general assets of the testator's estate without regard to any particular fund, thing, or things, while the latter are gifts of particular specified things, or of the proceeds of the sale of such things, or of a specific fund or a defined portion thereof. In the case of the former, there is no intent on the part of the testator to make a specific disposition of particular assets of his estate as such; in the latter case, the intent is that the attempted donation shall be satisfied by the delivery of specific property forming a part of the estate, and so described as to be identified as the subject of the gift, and in no other way. If the specified property is not owned by the testator at his death, the legatee, in the case of a specific legacy, takes nothing. He has no claim upon the general assets." *Weed* v. *Hoge,* 85 Conn. 490, 494, 83 A. 636; *Brainerd* v. *Cowdrey,* 16 Conn. 1, 6; 57 Am. Jur. 935, 936.

On the other hand, the testatrix gave to the defendant "all the rest, residue and remainder of my property, both real and personal." Obviously, the real estate listed in the inventory fell into the residue, was not specifically described and devised in the will, and must be classified as a general devise.

The situation is one, then, wherein the plaintiffs are specific legatees and another individual is the general devisee. Under such circumstances, § 6953 of the General Statutes describes the method and

means for paying ante-mortem claims. The section provides that "[s]pecific legacies shall not be taken or sold for the payment of debts and charges against the estate of the testator when there is other estate, real or personal, sufficient and available therefor and not specifically devised or bequeathed; but real estate may be sold in lieu thereof, when it is necessary for such purpose, unless such will shall otherwise direct." By virtue of these statutory provisions, therefore, the real estate falling into the residuary clause must first be applied to the payment of ante-mortem claims unless the testatrix directed otherwise.

The cash and securities which she owned at death were to be devoted to two purposes. First, they were to pay the expenses of administration. Ordinarily such expenses do not include the liquidation of ante-mortem claims and in the case at bar obviously do not. Administration expenses are those primarily incurred by an executor or administrator in the care, preservation and conservation of the assets of his estate. *Corbin* v. *Townshend,* 92 Conn. 501, 506, 103 A. 647; 2 Locke & Kohn, Conn. Probate Practice, § 579. Secondly, the cash and securities were to pay the bequests given under articles third and fourth to the Masonic Lodge and the Baptist Church, and then, if proceeds from the personalty permitted, the legacies mentioned in the codicil were to be satisfied in whole or pro rata. There is not the slightest indication that the testatrix sought to impose any other charge upon the cash and securities. It necessarily follows that the real estate is charged with the payment of the ante-mortem claims before the legacies to the plaintiffs may be used for that purpose, and the court was correct in so ruling. *Hewitt* v. *Sanborn,* 103 Conn. 352, 371, 130 A. 472;

*Duffield* v. *Pike,* 71 Conn. 521, 529, 42 A. 641.
There is no error.
In this opinion the other judges concurred.